# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38972**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Derrick M. HACKER**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 April 2017

————————————

*Military Judge:* Donald R. Eller, Jr.

*Approved sentence:* Bad-conduct discharge, confinement for 9 months, a fine of $25,000, with an additional 6 months of confinement if the fine is not paid, and reduction to E-1. Sentence adjudged 30 October 2015 by GCM convened at Spangdahlem Air Base, Germany.

*For Appellant*: Major Johnathan D. Legg, USAF.

*For Appellee:* Major Meredith L. Steer, USAF; Gerald R. Bruce, Esquire.

Before JOHNSON, MAYBERRY, and SPERANZA, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the court, in which Senior Judges MAYBERRY and JOHNSON joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of making false official statements, larceny, and forgery,

in violation of Articles 107, 121, and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 901, 921, 923. The court-martial sentenced Appellant to a bad-conduct discharge, confinement for 9 months, a fine of $25,000, with an additional 6 months of contingent confinement if the fine was not paid, and a reduction in grade to E-1.

On appeal, Appellant claims the convening authority erroneously concluded that his failure to pay the fine was for reasons other than indigence. We disagree and affirm.

## I. BACKGROUND

Appellant falsely claimed dependents in order to receive over $52,000 in allowances to which he was not entitled. On one occasion, Appellant forged the date of his divorce decree in order to perpetuate his fraud.

## II. DISCUSSION—FAILURE TO PAY A FINE

In his action on 7 January 2016, the convening authority approved the adjudged sentence and directed Appellant to pay the $25,000 fine by 30 April 2016. Appellant failed to pay, or make any arrangements to pay, any amount of the fine and the fine remained unpaid on the due date established by the convening authority. Consequently, the convening authority, exercising his independent authority to consider the imposition of confinement upon Appellant, found probable cause to believe Appellant's fine had not been paid and ordered a contingent confinement hearing pursuant to Rule for Courts-Martial (R.C.M.) 1113(e)(3) and Air Force Instruction (AFI) 51-201, ¶ 9.34.2.[1] Accordingly, the military judge who presided over Appellant's court-martial detailed himself as the hearing officer and conducted the hearing.

At the hearing, the Government and Appellant presented evidence regarding Appellant's available financial resources, total indebtedness, family hardships, and ability to pay the fine. The evidence showed the base comptroller squadron's delayed actions on Appellant's court-martial sentence resulted in Appellant continuing to be paid, despite the sentence, and an erroneous recoupment of $807.70 toward the fine.[2] In addition, Appellant provid-

---

[1] Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 9.34.2 (6 June 2013), establishes the procedures for conducting a contingent confinement hearing.

[2] The comptroller squadron's delays and errors resulted in an automatic recoupment from military pay to which Appellant was never entitled. Thus, there was no payment towards Appellant's fine.

ed an unsworn statement in which he claimed, in pertinent part, that he required his sport utility vehicle so that he would have a transportation to facilitate finding a job after confinement; he would not have "a secure retirement" if his Thrift Saving Plan (TSP) account was withdrawn; and "[e]arly withdrawal penalties would also be difficult on [Appellant] if [he] used the TSP money to pay on the debt."

The hearing officer initially determined the Government met its burden to show, by a preponderance of the evidence, that "an executed fine was delinquent." *See* AFI 51-201, ¶ 9.34.5. Thus, the hearing officer shifted the burden of proof to Appellant to show, also by a preponderance of the evidence, that Appellant's delinquency was due to Appellant's indigence. *See id*. The hearing officer found Appellant failed to meet his burden. The hearing officer specifically found Appellant "failed to show that he made good faith efforts to meet his obligations . . . and failed to show that his shortcomings were the result of indigency."

In reaching his written conclusions, the hearing officer considered Appellant's "current and impending state of indebtedness to the [United States] Government which is in an amount of more than $155,000." The hearing officer detailed Appellant's indebtedness, as follows:

> a. The evidence showed that [Appellant's] court-martial addressed his unjust enrichment resulting from his larceny of housing allowances in the amount of $52,231.33. Apparently, there were other issues of overpayment because [Defense Finance and Accounting Services] (DFAS) notes that there were original debts levied against [Appellant] in the amount of $111,459.10 which presumably included the $52,321.33.

> b. In addition the Air Force . . . posted the $25,000 fine into [Appellant's] pay records. . . . [T]he entry of the fine into the system prompted an attempt to begin recoupment against [Appellant's] military pay. In spite of the erroneous collection of $807.70, [Appellant] will remain indebted to the Government for the full amount of the fine.

> c. [Appellant] will be further indebted to the Government for more than $19,000 because he continued to receive pay and allowances . . . .

The hearing officer then examined the "several assets still within [Appellant's] control":

> First, [Appellant] owns a 2004 Chevrolet Tahoe which has a Blue Book value of approximately $3,556. [Appellant] indicated that he would need this vehicle for transportation after he is

released from confinement in order to help his sister, his mother, and find a job.

Second, [Appellant] owns a 2001 Suzuki motorcycle. [Appellant] indicated that the motorcycle was not operable and in need of repair. He also stated he was willing to fix the motorcycle and sell it to help pay off part of his debt. [Appellant] did not think he could sell the motorcycle for the [National Automobile Dealers Association (NADA)] price guide of $2,390 and did not make any efforts to have his sister sell the motorcycle for him because he believed it would have put a greater hardship on her under the circumstances.[3]

Third, [Appellant] had contributed to the [TSP] and believed he had approximately $35,000 invested. Passing comment was made by defense counsel concerning possible tax implications and fees associated with early withdrawal or loans secured against the TSP balance; however, *no evidence was put forth indicating [Appellant] seriously explored or considered using his TSP fund to reduce the fine.* While he mentioned some difficulty which might be experienced in securing a [Personal Identification Number (PIN)] in order access his TSP account, *he presented no evidence showing that he actually tried to do anything in this vein and was unsuccessful due to his incarceration.* Additionally, [Appellant] mentioned that he had concerns about being able to support himself in retirement especially if recoupment of the debt precluded his ability to acquire social security payment at some point in the future.

Fourth, [Appellant] also has checking and savings accounts in at least six (6) banks and credit unions. . . . In sum, [Appellant] has more than $17,800 in these accounts. Presumably, some portions of those balances have been increased due to the improper continuation of military pay . . . but the evidence only shows that the [credit union] account received [Appellant's pay after the automatic forfeitures should have started], and *no evidence was provided indicating how any other accounts were or were not impacted by this overpayment.* (Emphasis added)

The hearing officer also concluded that Appellant "engaged in limited attempts to satisfy the fine, but these scant endeavors fall short of what would

---

[3] Appellant's sister was caring for their mother at the time.

qualify as good faith effort." In particular, the hearing officer found Appellant's discussion with his sister about her securing a loan the only objective effort Appellant made to address the fine. The hearing officer found no evidence that Appellant utilized financial advice, made any effort to liquidate available assets, took steps to assist his sister and mother, offered to initiate a payment plan, or even requested additional time to pay the fine.

Based on his essential findings—the fine was ordered and executed, the fine was not paid on time, Appellant did not make good faith or bona fide efforts to pay the fine, and the delinquency was not the result of indigence—the hearing officer recommended Appellant be confined for the full amount of the adjudged contingent confinement.

On 25 May 2016, the convening authority issued a separate court-martial order directing the execution of the portion of Appellant's sentence "providing for an additional six months of confinement in lieu of the $25,000 fine."

Appellant asserts that he was prejudiced by the hearing officer's failure to "address an objective standard of indigence" and erroneous inclusion of "a false valuation of assets that was not available in the amount claimed to determine that Appellant had not made good faith efforts to pay." Appellant maintains the hearing officer should have considered the federal poverty guidelines or any other objective standard of indigence, to include the word's dictionary definition, instead of relying upon his "own subjective determination that Appellant was not indigent." Moreover, Appellant argues that the hearing officer "disregarded the well-known and verifiable penalties that would result if Appellant liquidated his TSP . . . and other obstacles reasonably preventing Appellant from selling assets (such as confinement)." According to Appellant, "the hearing officer's dismissal of these penalties as a '[p]assing comment' from defense counsel simply ignored the true reality that these funds were not available in the amount claimed by the hearing officer to reduce the fine."

"We review the decision to convert a fine into confinement for an abuse of discretion." *United States v. Phillips*, 64 M.J. 410, 414 (C.A.A.F. 2007) (citing *United States v. Palmer*, 59 M.J. 362, 366 (C.A.A.F. 2004)).

As an element of its adjudged sentence, a court-martial may impose a fine in lieu of, or in addition to, forfeitures. R.C.M. 1003(b)(3).

> To enforce collection, a fine may be accompanied by a provision in the sentence that, in the event the fine is not paid, the person fined shall, in addition to any period of confinement adjudged, be further confined until a fixed period considered an equivalent punishment to the fine has expired.

*Id.*

5

The authority considering the imposition of the contingent confinement must give the person fined notice and an opportunity to be heard. R.C.M. 1113(e)(3). At the contingent confinement hearing, the person fined bears the burden of demonstrating that he has made good faith efforts to pay the fine, but cannot because of indigency. *Id*. If the person fined meets this burden, the contingent confinement may only be executed if the authority determines "there is no other punishment adequate to meet the Government's interest in appropriate punishment." *Id*.

There is no dispute Appellant was afforded the due process rights to which he was entitled. *Palmer*, 59 M.J. at 365. There is also no dispute that those rights do not relieve him from his burden of showing his failure to pay the lawfully imposed fine was due to his indigence. Appellant offered no evidence at the hearing of any poverty standards for the hearing officer to consider. On appeal, Appellant likewise offers no authority to suggest the hearing officer was required to do so. Moreover, Appellant offered no evidence at the hearing describing his potential TSP withdrawal penalties, even though appellate counsel asserts such evidence is seemingly "well-known and verifiable." In this case, we are not persuaded that any of the hearing officer's findings were clearly erroneous. *See id*. Appellant failed to demonstrate indigence. There is a substantial basis in the hearing record to conclude that Appellant made no good faith efforts to pay the fine and such delinquency was not caused by Appellant's indigence. *See id*. Thus, the hearing officer and the convening authority did not abuse their discretion.

### III. CONCLUSION

The approved findings and sentence, to include the additional six months of confinement in lieu of the fine, are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

6